**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

JONATHAN ANTONIO WOODS                                         PETITIONER
ADC #162833

v.                                         4:19-cv-00707-JM-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction                               RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr.   Any party may serve and file written objections to this recommendation.   Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.    Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.    INTRODUCTION

Petitioner Jonathan Antonio Woods, an inmate at the Cummins Unit of the Arkansas Division of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus *pro se*. (Doc. No. 2.)    Mr. Woods was convicted by a jury in Drew County, Arkansas, of capital murder and kidnapping.    (Doc. No. 6-2 at 242-44.)    The State of Arkansas sought the death penalty; however, he was sentenced to life imprisonment without the possibility of parole for the capital murder and a term of forty years' imprisonment for the kidnapping.    (*Id.*)    The Arkansas Supreme Court later described the evidence in the case as follows:

> The State introduced evidence demonstrating that on March 14, 2014, the Monticello Police Department was called to the Save-A-Lot store in Monticello for reports of a man assaulting a woman in the parking lot.    The woman proved to be Samantha Poole, and the man was Woods.    The incident began inside the store when Woods grabbed Poole by the hair and dragged her outside.    Witnesses reported that the man eventually forced Poole at gunpoint into the driver's seat of a Cadillac.    One eyewitness reported hearing gunshots and seeing Poole exit the vehicle once before Woods "brought her back."    The two then drove away.    James Slaughter served as a Drew County sheriff's deputy on the date of the crime. Slaughter testified that he was on the way to the Save-A-Lot when he saw the Cadillac pulling out of the parking lot.    Slaughter blocked the Cadillac with his cruiser.    Once the Cadillac was stopped, Woods shot Poole multiple times, killing her.    Slaughter shot Woods during the confrontation, but Woods survived.

*Woods v. State*, 2019 Ark. 62, at 1-2, 567 S.W.3d 494, 496.

2

The Arkansas Supreme Court affirmed on direct appeal, rejecting Mr. Woods's argument that the trial court erred in denying his *Batson* challenges to the State's use of peremptory strikes at jury selection. *Woods v. State*, 2017 Ark. 273, 527 S.W.3d 706. Mr. Woods then filed a *pro se* petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37, claiming, among other things, that his trial counsel was ineffective for making inflammatory remarks comparing Mr. Woods's case to O.J. Simpson's and that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal. (Doc. No. 6-7 at 19-28.) The Drew County Circuit Court denied relief without a hearing. (*Id*. at 33-39.) Mr. Woods appealed through counsel, and the Arkansas Supreme Court affirmed. *Woods*, 2019 Ark. 62, 567 S.W.3d 494.

In his Petition for Writ of Habeas Corpus, Mr. Woods recites four grounds for relief: (1) his Sixth and Fourteenth Amendment rights were violated at trial by the State's systematic exclusion of black jurors and the trial court's denial of his *Batson* challenges; (2) his trial counsel's remarks to the jury comparing his case to O.J. Simpson's murder case constituted ineffective assistance of counsel; (3) his appellate counsel's failure to challenge the sufficiency of the evidence on direct appeal constituted ineffective assistance of counsel; and (4) his trial counsel's failure to move for a change of venue constituted ineffective assistance of counsel and resulted in the denial of a fair trial. (Doc. No. 2 at 6-11.) After careful consideration of Mr. Woods's Petition and the Response (Doc. No. 6) and Reply (Doc. No. 9), I recommend relief be denied. The Petition should be dismissed with prejudice.

## II.    ANALYSIS

### A.    *Batson* Challenges

Mr. Woods, who is African American, claims he was denied a jury of his peers. (Doc. No. 2 at 6.) He argues the prosecution offered pretextual reasons for striking all three of the only three African American members of the jury venire. (*Id*.) According to Mr. Woods, the trial court accepted the prosecution's race-neutral reasons without making a sincere and reasoned effort to evaluate their genuineness and without considering whether a pattern of discrimination had been established, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). (*Id*. at 7.)

As previously noted, the Arkansas Supreme Court considered this argument on direct appeal and rejected it. Under the Antiterrorism and Effective Death Penalty Act of 1996, and in the interests of finality and federalism, federal habeas courts are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Federal courts may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication of the claim

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrives "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A state court decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.   Under subsection (d)(2), a state court decision is based on an "unreasonable determination of the facts" "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003); *see also* 28 U.S.C. § 2254(e)(1) (a state court's factual finding shall be presumed to be correct, and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence).

The United States Court of Appeals for the Eighth Circuit has held that each of the three steps of a *Batson* inquiry, set forth below, involves a determination of fact.   *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).   Accordingly, Mr. Woods's claim of a *Batson* violation must be reviewed under § 2254(d)(2).   Habeas review must presume that the state court found the facts correctly, unless Mr. Woods rebuts that presumption with clear and convincing evidence. *Weaver*, 241 F.3d at 1030 (citing 28 U.S.C. § 2254(e)(1)).   Mr. Woods has not done so, and he has thus failed to show the Arkansas Supreme Court's decision was based on an unreasonable determination of the facts.

It is well settled that a challenge to a peremptory strike under *Batson* requires a three-step inquiry.   *See, e.g.*, *Rice v. Collins*, 546 U.S. 333, 338 (2006).   First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.   *Id*.   Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.   *Id*.   Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices.   *Id*. (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per

curiam)).   Third, the court must then determine whether the defendant has carried his burden of

proving purposeful discrimination.   *Id.*   This final step involves evaluating "the persuasiveness

of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding

racial motivation rests with, and never shifts from, the opponent of the strike."   *Id.* (quoting

*Purkett*, 514 U.S. at 768).

The Arkansas Supreme Court analyzed Mr. Woods's *Batson* claim using this three-step

inquiry.   The court held Mr. Woods had failed to make a prima facie showing of discrimination

as to the strike of prospective juror Young, the first of ten peremptory strikes used by the

prosecution overall:

> As the State argued at the time of the challenge to the strike, the trial court's request
> for a race-neutral explanation of the peremptory strike against Young was
> premature.   As the first juror to be struck overall, there was simply no basis on
> which to argue that the strike was part of a "process or pattern" of discriminatory
> strikes.   Demonstration of this process or pattern is necessary to the first step of
> the *Batson* inquiry, and only successful completion of the first step triggers the need
> to provide a race-neutral explanation.   Because the trial court need not have
> reached steps two or three of the *Batson* inquiry at all for the strike against Young,
> Woods's argument on appeal regarding the adequacy of the trial court's
> consideration of these steps is unavailing.

*Woods*, 2017 Ark. 273, at 3, 527 S.W.3d at 708.   Mr. Woods challenges this finding as incorrect,

but his assertion is totally unsupported.   Moreover, even if Mr. Woods had made a prima facie

showing of discrimination, the State offered race-neutral reasons for striking this juror – namely,

that she failed to return a jury questionnaire, self-identified as belonging to a faith group that

believes the death penalty to be morally wrong, and asserted she did not feel her role was to be

"judge or jury."   *Id.*   In light of these justifications, Mr. Woods would have been unable to show

this strike was racially motivated.   Clearly, the State's goal was to seat a jury open to convicting

Mr. Woods and sentencing him to death.

With respect to the two remaining African American potential jurors, who were the sixth

and tenth to be struck, the court noted they were among a group of eight individuals who were all struck because they answered "B" when asked which option below more closely matched their views on the death penalty:

> A:  I believe the death penalty is appropriate in some capital cases and I could return a verdict resulting in death in the proper case; or
>
> B:  Although I do not believe that the death penalty should be imposed, as long as the law provides for it, I could assess the death penalty in the proper set of circumstances.

*Id*.  Additionally, potential juror Sheets indicated, both in his jury questionnaire and during jury selection, that he suffered from posttraumatic stress disorder and mental illness, while potential juror Simmons indicated in her jury questionnaire that she did not believe the public "should have the power to kill."  *Id*.  Because Mr. Woods did not present any additional evidence or arguments after the State offered these race-neutral reasons, the trial court, and then the Arkansas Supreme Court, were left to consider "the prima facie showing, the race-neutral explanation, and its own assessment of the credibility of the parties."  *Id*. at 4.  The court concluded these potential jurors' qualified opposition to the death penalty was sufficient to justify the State's use of peremptory strikes.  *Id*. at 5.  Again, Mr. Woods offers no rationale or evidence indicating this finding is erroneous.  He argues, in a conclusory fashion, that the trial court failed to conduct a full *Batson* inquiry; however, it was Mr. Woods's burden to prove, at the third step of the inquiry, that the strikes were racially motivated.  *Purkett*, 514 U.S. at 768.  He failed to do so, and the record supports the state court's finding that the prosecution's goal was to seat a death-qualified jury.

Mr. Woods has failed to show the state court's findings on this issue were based on an unreasonable determination of the facts.  Therefore, he is not entitled to relief.

### B.    Comparisons to O.J. Simpson Case

Mr. Woods alleges he received ineffective assistance of counsel at trial because his trial counsel made "inflammatory" remarks to the jury comparing his case to that of O.J. Simpson. (Doc. No. 2 at 8.)  Specifically, trial counsel inquired during voir dire as to how many of the potential jurors believed Simpson was actually guilty.  (Doc. No. 6-2 at 354.)  He then explained:

> Here's the reason why I asked that question.  All of you have said that you believe that a defendant is innocent until they are proven guilty.  But you say it – But you see, sometimes you don't believe it.  Because what do we know about O.J. Simpson?  Twelve men and women have found him not guilty.  Okay.
>
> You may think that's a lawyer trick, but it's not.  It illustrates my point. And, so, I guess my point is, is that can all of you commit – I understand how you get to where you are.  But can you commit to us that you will, indeed, follow that principle that, indeed, a defendant is innocent until the government proves him guilty beyond a reasonable doubt?  Can I see the hands of all those that will commit to that?

(*Id.* at 355.)  Trial counsel posed the same question, with the same explanation, to another panel of potential jurors.  (*Id.* at 784-787.)

Mr. Woods points out that a juror later returned to the O.J. Simpson topic in answering defense counsel's voir dire question regarding whether he would infer guilt from a defendant's refusal to testify.  (*Id.* at 420.)  When counsel reiterated that such a negative inference is disallowed, the juror agreed, saying, "We learned that from the O.J. case, didn't we?"  (*Id.*) Counsel concurred, saying, "Probably.  That's exactly right.  We learned a lot from the O.J. case."  (*Id.*)  Mr. Woods also points out that the prosecutor brought up the topic during closing argument – according to Mr. Woods, to exploit defense counsel's ineffectiveness in bringing it up in the first place:

> We see things on TV.  Defense counsel talked about the O.J. trial and how some people still believe that O.J. is guilty.  Even though he was found innocent, that doesn't mean he didn't commit the crimes.  It just means he wasn't convicted.
>
> And, so, a lot of times, we'll see something on TV, some other trial like that and we'll go, how in the world did they come to that decision.  And I guess in some

8

> states they tell you've got to check your common sense at the door.  But here in
> Arkansas, you take your common sense, your personal life experiences and you
> take them back there and you use them in determining what the facts are in this
> case.

(*Id*. at 1196.)  Mr. Woods suggests the prosecutor was "implicitly encourag[ing] the jury to

convict Petitioner as some sort of delayed retribution for the jury that erroneously acquitted O.J.

Simpson."  (Doc. No. 2 at 9.)

Because this claim was raised and rejected in the Rule 37 proceeding, the state court's

conclusion is entitled to deference under § 2254(d).  Mr. Woods has not shown the Arkansas

Supreme Court's holding was contrary to, or involved an unreasonable application of, clearly

established federal law, nor has he shown it was based on an unreasonable determination of the

facts.

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a claim of ineffective assistance

of counsel has two components:  (1) that counsel's performance was deficient, resulting in errors

so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment;

and (2) that the deficient performance prejudiced the defense, depriving the defendant of a fair

trial.    The deficient-performance component requires that a defendant show counsel's

representation fell below an objective standard of reasonableness.  *Id*. at 687-88.  The prejudice

component requires that a defendant establish a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  *Id*. at 694.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id*.

Unless a defendant makes both showings, it cannot be said that the conviction resulted from a

breakdown in the adversary process that renders the result unreliable.  *Id*. at 687.

Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  A court

must indulge a "strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The Arkansas Supreme Court correctly stated these governing principles and held as follows:

> Matters of trial strategy and tactics, even if arguably improvident, are not grounds for a finding of ineffective assistance of counsel. *Hayes v. State*, 2014 Ark. 104, 431 S.W.3d 882. It is clear that trial counsel's references to the Simpson case were part of a strategy to identify potential jurors who might view his client unfavorably. The files and the record show that Woods is not entitled to relief, and the circuit court's findings sufficiently reflect that fact. The circuit court did not clearly err in determining that the references to the Simpson case fell within the range of reasonable professional assistance or in denying without a hearing Woods's petition as to this point.

*Woods*, 2019 Ark. 62, at 5, 567 S.W.3d at 498. Mr. Woods has not pointed to any conflict with federal law in this holding, and none is apparent. He notes that counsel's strategic decisions must still be supported by reasonable professional judgment. (Doc. No. 9 at 17.) This is true. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). However, Mr. Woods has not demonstrated any unreasonableness in his trial counsel's strategic decision to use an infamous case to illustrate two points – that a defendant is innocent until proven guilty and is not required to testify – and to weed out any potential jurors who might be disinclined to heed those instructions. Contrary to Mr. Woods's assertions, his trial counsel did not characterize him as being similar in any way to O.J. Simpson, and the prosecutor's closing remarks did not invite the jury to convict him for the purpose of avenging Simpson's acquittal.

Mr. Woods also points out that the trial court, in denying his Rule 37 petition without a hearing, erroneously suggested that the topic of O.J. Simpson was first raised by a member of the jury venire. (Doc. No. 6-7 at 38.) But the Arkansas Supreme Court recognized this error and

found it to be inconsequential.  *Woods*, 2019 Ark. 62, at 4-5, 567 S.W.3d at 497-98.  In short, Mr. Woods's trial counsel did not perform deficiently, either by bringing up the Simpson trial as an example or by responding to the juror who referred to it.  Trial counsel's performance fell within the wide range of reasonable professional assistance, and there is no reasonable probability that the result of the trial would have been different absent these remarks.

Taking § 2254(d) and *Strickland* together, habeas review of the Arkansas Supreme Court's decision must be "doubly deferential":  "We take a 'highly deferential' look at counsel's performance, *Strickland*, [466 U.S. at 689], through the 'deferential lens of § 2254(d),' [*Knowles v.] Mirzayance*, [556 U.S. 111, 121, n.2]."  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *see also Abernathy v. Hobbs*, 748 F.3d 813, 817 (8th Cir. 2014).  Mr. Woods has failed to show that his counsel's performance was unreasonable under *Strickland*, and he has failed to show that the state court's holding was unreasonable under § 2254(d).  Accordingly, he is not entitled to habeas relief on this claim.

### C.    Sufficiency of the Evidence

Mr. Woods contends his appellate counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence on direct appeal.  (Doc. No. 2 at 9.)  He maintains his convictions would have been reversed and dismissed on appeal if his appellate counsel had argued (1) there was insufficient evidence to support the kidnapping conviction, as the victim could have driven away before he entered the passenger side of the car; and (2) there was insufficient evidence to support the capital-murder conviction, since it was charged as felony murder with the kidnapping as the predicate felony.  (*Id*. at 9-11.)

Again, this claim is subject to deferential review under § 2254(d) because it was adjudicated on the merits in the Rule 37 proceeding.  Mr. Woods cannot show the Arkansas

Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, and he cannot show the decision was based on an unreasonable determination of the facts.

As Respondent points out, in order to overcome the *Strickland* presumption that counsel's conduct falls within the wide range of reasonable professional assistance, Mr. Woods must present evidence that "appellate counsel's failure to raise a claim was [not] an exercise of 'sound appellate strategy.'"  *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (quoting *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998)).

> Reasonable appellate strategy requires an attorney to limit the appeal to those issues which he determines to have the highest likelihood of success.  To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal.

*Parker v. Bowersox*, 94 F.3d 458, 462 (8th Cir. 1996) (citing *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996)).   In *Parker*, the Eighth Circuit specifically held that, when there is ample evidence supporting a conviction, appellate counsel's choice to forego a challenge to the sufficiency of the evidence is "well within the bounds of competent appellate assistance."   *Id*.

The Arkansas Supreme Court correctly stated these principles and held Mr. Woods had not shown that his appellate counsel failed to raise a meritorious issue on appeal, as substantial evidence supported the verdicts.   *Woods*, 2019 Ark. 62, at 8, 567 S.W.3d at 499-500.   As the court noted, the evidence and testimony at trial clearly demonstrated that a kidnapping had already occurred by the time Mr. Woods and the victim were in the car.   *Id*. at 7, 567 S.W.3d at 499. Specifically, Mr. Woods dragged the victim from the store by her hair, the victim was heard screaming that Mr. Woods would kill her, Mr. Woods forced her into the car at gunpoint, and a witness reported hearing gunshots and seeing the victim exit the vehicle once before Mr. Woods "brought her back."   *Id*. at 2, 7, 567 S.W.3d at 496, 499.   Given the surveillance video (Doc. No.

6-2 at 843), 911 calls (*id*. at 852), and testimony from multiple eyewitnesses (*id*. at 873, 904, 925, 931) introduced at trial, it is difficult to imagine a case with stronger evidence. There is no question that Mr. Woods restrained the victim without her consent so as to interfere substantially with her liberty with the purpose of inflicting physical injury upon her or terrorizing her. Ark. Code Ann. § 5-11-102(a).

Mr. Woods's appellate counsel did not act unreasonably in declining to raise a clearly meritless issue, and the Arkansas Supreme Court's decision is not unreasonable under § 2254(d). Mr. Woods is not entitled to relief on this claim.

### D.    Change of Venue

Finally, Mr. Woods asserts his trial counsel's failure to move for a change of venue constituted ineffective assistance of counsel and denied him a fair trial. (Doc. No. 2 at 11.) He contends the pretrial publicity in Drew County caused bias in the jury pool. (*Id*.)

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")). When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted. *Murphy*, 652 F.3d at 849. Moreover, if it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Armstrong v. Iowa*, 418 F.3d 924,

13

926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).   When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate:   (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent.   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Mr. Woods concedes this claim is procedurally defaulted, as he did not present it in state court.   (Doc. No. 9 at 21.)   He maintains, however, that he can demonstrate cause for the default pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012).   In *Martinez*, the United States Supreme Court modified the general rule that an attorney's errors in a post-conviction proceeding do not qualify as cause for a default:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.   The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.   The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

566 U.S. at 14.   In *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), the Court expanded the holding in *Martinez* to cases in which the state procedures, by reason of their design and operation, make it "highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."   And in *Sasser v. Hobbs*, 735 F.3d 833, 852-53 (8th Cir. 2013), the Eighth Circuit held the *Trevino* analysis applies – and

*Martinez* is therefore applicable – in Arkansas cases because Arkansas does not generally afford defendants meaningful review of ineffective-assistance-of-trial-counsel claims on direct appeal.

Although Mr. Woods pursued his Rule 37 petition without the assistance of counsel, *Martinez* is not applicable because he cannot demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one.  First, as Respondent points out, Mr. Woods's claims of pretrial publicity and bias in the jury pool are totally conclusory and unsupported.  He does not provide any specific detail about the alleged publicity, other than to reiterate that this was a capital case, nor does he point to any instances in the record that indicate juror bias.  *See Sargent v. Armontrout*, 841 F.2d 220, 226 (8th Cir. 1988) ("[s]peculation and conjecture" are insufficient in habeas).

Second, Mr. Woods cannot show that a motion for change of venue would have been successful.  "Those federal circuit courts of appeals to address *Strickland*'s prejudice inquiry, in the context of counsel's alleged error in failing to file a motion for change of venue, have held that the defendant must prove that there is a reasonable probability that the trial court would have granted a motion for change of venue if defense counsel had made such a motion."  *Velazquez-Ramirez v. Fayram*, Case No. C12-4065-MWB, 2014 WL 523810, at 16 (N.D. Iowa Feb. 7, 2014) (citing *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2001); *Deiterman v. Kansas*, 291 Fed. App'x 153, 159 (10th Cir. 2008); *Tafoya v. Tansy*, 9 Fed. App'x 862, 871 (9th Cir. 2001)).  Under Arkansas law, a criminal case may be removed to another county when the minds of the inhabitants of the original county "are so prejudiced against the defendant that a fair and impartial trial cannot be had in that county."  Ark. Code Ann. § 16-88-201; *Taylor v. State*, 334 Ark. 339, 345, 974 S.W.2d 454, 458 (1998).  More specifically, "[t]here can be no error in the denial of a change of venue if an examination of the jury selection shows that an impartial jury was selected and that

each juror stated he or she could give the defendant a fair trial and follow the instructions of the court." *Rankin v. State*, 329 Ark. 379, 396, 948 S.W.2d 397, 406 (1997).

Here, the trial court asked each potential juror at the outset whether he or she had any knowledge about the case. (Doc. No. 6-2 at 315.) The court excused every potential juror who had heard anything about it. (*Id*. at 315-41.) The remaining potential jurors affirmed they had not previously formed an opinion about the case. (*Id*. at 342.) They also affirmed they could be fair and impartial jurors, follow the court's instructions, and base their verdict strictly upon the law. (*Id*. at 341-43.) Accordingly, Mr. Woods cannot demonstrate a reasonable probability that he would have been granted a change of venue even if his trial counsel had pursued such a request.

For these reasons, Mr. Woods cannot show that this claim of ineffective assistance of trial counsel is a substantial one; therefore, *Martinez* does not excuse his procedural default. And for the same reasons, the claim would fail on the merits even if it were not procedurally defaulted.

## III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Woods has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.      Mr. Woods's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED with prejudice.

2.    A certificate of appealability not be issued.

DATED this 23rd day of March 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE